**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUANA GARCIA, individually and on behalf of all others similarly situated, | Civil Action No.1:20-cv-5711 |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION, AND INJUNCTIVE RELIEF** |
| vs. | |
| COMMUNITY OPTIONS, INC., COMMUNITY OPTIONS NEW YORK, INC. | **JURY TRIAL DEMAND** |
| Defendants. | |

Plaintiff Juana Garcia ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges upon personal knowledge and information and belief as follows:

## NATURE OF THE ACTION

1.      This is a collective and class action brought by Individual and Representative Plaintiff Juana Garcia ("Plaintiff") and all putative plaintiffs (collectively "Plaintiffs"), on their own behalf and on behalf of the Proposed Collective Classes and Classes identified below. Plaintiff and the putative Collective Class and Class Members were or are employed by Defendant Community Options, Inc. ("COI") and Defendant Community Options New York, Inc. ("COI NY") (collectively "Defendants") in Brooklyn, New York during the relevant Class and Collective Class Periods as non-exempt "Hourly Paid Staff." All Plaintiffs were specifically affected by an unlawful "time shaving" policy and practice, where the Executive Director of the Brooklyn office manually edited the clock-out times of Hourly Paid Staff in order to avoid paying them for any overtime hours worked that Defendants knowingly suffered and permitted. Through this practice, Defendants unlawfully denied Plaintiffs overtime premiums at a rate of at

least 1.5 times the regular rate for all hours worked over forty in a week and engaged in recordkeeping practices that violated federal and/or state wage and hour laws. Plaintiffs are all similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and the Federal Rule of Civil Procedure 23 and have suffered the same violations pursuant to Defendants' common policies and practices.

2.      The Collective Class is made up of all persons who are or have been employed by Defendants in Brooklyn, New York as Hourly Paid Staff within the period of the past three years from this action's filing date through the date of the final disposition of this action (the "Collective Class Period") and who were subject to Defendants' unlawful and uniform time shaving policy and practice resulting in the failure to pay Collective Class Plaintiffs overtime premiums for all hours worked over 40 during the Collective Class Period.

3.      The Class is made up of all person who are or have been employed by Defendants in Brooklyn, New York as Hourly Paid Staff within the period of the past six years from this action's filing date through the date of the final disposition of this action (the "Class Period") and who were subject to Defendants' unlawful and uniform time shaving policy and practice resulting in the failure to pay Class Plaintiffs overtime premiums for all hours worked over 40 during the Class Period and the failure to provide the Class Plaintiffs with accurate wage statements on each payday that includes the information required by the NYLL, including the correct number of hours worked during the pay period.

4.      Plaintiffs seek relief for the Collective under the Fair Labor Standards Act ("FLSA"), 29 .S.C. §§ 201 *et seq*., and for the Class pursuant to the applicable provisions of the New York Labor Law ("NYLL"), §§ 190 *et seq*., to remedy the Defendants' failure to pay all wages due and for recordkeeping failures, in addition to injunctive relief.

5.      Additionally, Plaintiff Garcia brings an individual claim against Defendants for terminating her position in retaliation, in violation of the FLSA, 29 U.S.C. § 215 and the NYLL, § 215, for complaining to Defendants on several occasions regarding Defendants' failure to pay Hourly Paid Staff overtime premiums for all hours worked over 40.

## PARTIES

6.      Individual and Representative Plaintiff Juana Garcia is a former Program Manager employed by Defendants. Presently, and at all relevant times, Plaintiff resides in Brooklyn, New York. In January 2019, Plaintiff began her employment at the Brooklyn office located at 161-165 Woodruff Avenue Brooklyn, NY 11226.  In or around April 2019, Ms. Garcia was asked to take on another role as senior staff, which she was informed was due to Defendants' budgetary concerns.  In February 2020, Ms. Garcia retained her previous role as Program Manager until the date of her termination—due to Ms. Garcia's numerous vocal complaints regarding Defendants' unlawful overtime policy and practices—on September 29, 2020. At all relevant times, Plaintiff Garcia was an "employee" within the meaning of all applicable statutes, including the FLSA and NYLL.

7.      Defendant COI is a national nonprofit corporation incorporated under the laws of New Jersey with its principal place of business and headquarters located at 16 Farber Road, Princeton, New Jersey 08540. COI is licensed to do business in New York. It maintains forty offices across ten states: Arizona, Maryland, New Jersey, New Mexico, New York, Pennsylvania, South Carolina, Tennessee, Texas, and Utah. It employs over 5,000 employees. It has the following offices in New York alone: Binghamton, Brooklyn, Queens, Manhattan, Syracuse, and Waverly. At all relevant times herein, COI met the definition of "employer" of the Representative Plaintiff,

the Putative Collective and Putative Class (as defined above) under all applicable statutes, including the FLSA and NYLL.

8.      Defendant COI NY is a domestic nonprofit corporation incorporated under the laws of New York with its principal place of business and headquarters located at 16 Farber Road, Princeton, New Jersey 08540. At all relevant times herein, Defendant Community Options New York Inc. met the definition of "employer" of the Representative Plaintiff, the Putative Collective and Putative Class (as defined above) under all applicable statutes, including the FLSA and NYLL.

## Interrelationship Between Defendant Community Options Inc. and Community Options New York Inc.

9.      Upon information and belief, Defendant COI and COI NY work in tandem with one another and jointly manage the operations of all offices located in New York.

10.      While each Defendant has a separate Board of Directors, there are members who serve on both boards. For instance, the President of Community Options Inc., Robert Stack, serves as Chairman on COI NY's Board of Directors *and* as a member on COI's Board of Directors. Mr. Ian Bogarty, Esq. serves as a Trustee on the Board of Directors for both COI and COI NY.

11.      Both COI and COI NY's names are listed on Plaintiff Garcia's wage statements with one address listed: 16 Farber Road, Princeton, New Jersey 08540.

12.      Upon information and belief, both Defendants' headquarters is located at 16 Farber Road, Princeton, New Jersey 08540 and oversee operations and employment practices in all of the local offices in New York.

## JURISDICTION AND VENUE

13.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and

supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. The Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

14.    In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207, *et seq.*

15.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

16.    Venue is proper in the United States District Court, Eastern District of New York pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims that is the subject of this action occurred in this District.

17.    This Court has personal jurisdiction over COI, because it is actively licensed to do business in New York, has several offices located across the state of New York and routinely transacts business in New York. Furthermore, COI is explicitly named on Plaintiff Garcia's wage statements, which are directly related to the substantive claims set forth in this action.

18.    This Court has personal jurisdiction over COI NY because its place of incorporation is New York State.

## WAGE AND HOUR COLLECTIVE CLASS ALLEGATIONS

19.    COI is a national nonprofit with centralized management in Princeton, New Jersey for all administrative and business operations for its over forty offices throughout the United States. Each of its offices provides residential and employment support for people with severe development and intellectual disabilities. All together, they provide services to more than 2,700 individuals with disabilities.

20.    COI has substantial operations in New York State with offices in Binghamton, Brooklyn, Queens, Manhattan, Syracuse, and Waverly.

21.     Plaintiff brings FLSA claims on behalf of herself and other employees similarly situated as authorized under 29 U.S.C. § 216(b).  The employees similarly situated in the Collective Class are:

> **Federal Overtime Pay**: All persons who are or have been employed by Defendants as Hourly Paid Staff in Brooklyn, New York within the period of the past three years prior to this action's filing date through the date of the final disposition of this action who worked over 40 hours in at least one workweek during the Collective Class Period and who were subject to Defendants' failure to pay lawful overtime premiums for all hours worked over forty during a workweek based on the uniform policy and practices alleged herein.

22.     Defendants employed Plaintiff and the Collective Class Members during the Collective Class Period.

23.     Plaintiff began her employment in January 2019 in the Brooklyn Office as a Program Manager as a non-exempt employee and was paid on an hourly basis at a rate of $19-20/hour. Her regularly scheduled shift was from 7:00am – 3:00pm. Her job duties consisted of overseeing Hourly Paid Staff of eleven "Direct Support Professionals," who provided direct services to severely disabled clients on-site during the Day Habilitation program.  Direct services included using one of two company-owned vehicles to pick up clients from their homes, drive them to the office location for the day, and drop them off at the end of the day at their respective homes.

24.     Plaintiff did not participate in any major decision-making that would impact the whole Company and did not have the authority to hire or fire staff. While she at times offered her input, her immediate supervisor, the Program Specialist Shernette Miller, or the Executive Director Tiffany Dacre, always made the final decision.

25.     Plaintiff herself often participated in similar job duties to that of other Hourly Paid Staff like the Direct Support Professionals, particularly when the office was short-staffed and drove clients back and forth from their homes using one of the company-owned vehicles.

26.     Upon information and belief, each office maintained by Defendants has at least two distinct programs: a "Day Habilitation" program and a "Residential" program. The former involves transporting disabled clients to the office site itself and assisting them with activities throughout a scheduled day of programs. The latter involves staff providing direct services for clients living in their privately rented apartments.

*27.*     To keep track of hours worked, Plaintiff and Collective Class Members were required to utilize Kronos, an electronic timekeeping system. When they arrived for their shift, they were required to clock in and out by calling a number associated with the Kronos timekeeping system. Telephones were placed in different areas of the offices for employee use.

28.     For Residential staff, they were and are permitted to use the phone in client residences in order to clock in and out for their shifts.

29.     Plaintiff and Collective Class Members were paid wages semi-monthly.

30.     Prior to December 2019, Collective Class Members who accrued overtime hours would sometimes be paid for all hours worked over 40, but not always.

31.     Beginning in December 2019, Plaintiff and her fellow Collective Class Members in the Brooklyn office were notified via email from Tiffany Dacre, then the Residential Director, that *all* staff were required to clock in and out at the start and end of their shifts and that they were not permitted to stay back after the shift, unless previously approved by management. They were further instructed that all overtime must be approved and failure to adhere to such rules and regulations would result in disciplinary actions leading up to termination. This information was posted in common areas of the office for all staff to see. Upon information and belief, this policy applied to all Hourly Paid Staff in the Brooklyn office.

32.     As a means of implementation of this new overtime policy, managers were required to

submit paperwork every week for overtime pay with documentation of names of individual staff members who worked any hours in excess of 40 hours, the dates on which they worked past their scheduled eight-hour shift, and a justification for each day they worked in excess of eight hours. The managers submitted such paperwork to the Program Specialist, who would review it and then pass it on to the Executive Director. The Executive Director was the final decision-maker in regard to approval of overtime pay.

33.     Plaintiff and Collective Class Members often worked in excess of over 40 hours during a single workweek in order to fulfill their required job duties and responsibilities.

34.     For example, Plaintiff and Collective Class Members in the Day Habilitation program in the Brooklyn office were required to park company-owned vans near the office, once they dropped off clients at their respective homes. Because there are no company-owned parking spaces, they had to secure public parking, which often would take twenty minutes to up to an hour past the end of their eight-hour scheduled shift. They would then subsequently clock out. It was thus impossible to stay within their scheduled eight-hour shifts.

35.     Hourly Paid Staff in the role of Program Managers such as Plaintiff would also accrue overtime pay as a result of having to wait for other employees to complete their shifts and fill out the required paperwork for them to receive overtime pay, per office policy or wait for other staff to return the company car keys, so that they could secure them in a lockbox for safekeeping. If Plaintiff did not wait for staff to return the keys and they went missing, Plaintiff could have been subject to disciplinary action.

36.     Plaintiff thus often worked 30 minutes or 1 hour past the end of her scheduled shift at 3:00pm. As a result, she would clock out around 3:30pm or 4:00pm but was not always properly compensated at an overtime rate for all hours worked over 40 hours in a given workweek.

37.     For instance, during the workweek of September 8, 2020 through September 15, 2020, Plaintiff worked past her scheduled shift's end time of 3:00pm up until 4:00pm on September 10, 11, 14, and 15th but was not compensated for all the hours worked in excess of 40 hours at an overtime rate. Plaintiff accrued overtime hours during this time period because she either had to wait for staff to return with keys to company-owned vehicles after dropping clients off and securing public parking and/or was required to complete paperwork as a result of the office's strict overtime policy.

38.     Plaintiff is aware of other Hourly Paid Staff who had not been receiving overtime pay either, both in the Day Habilitation Program where she worked and the Residential Program. Upon information and belief, there were and are approximately 8 hourly paid employees in the Day Habilitation Program and approximately 12 hourly paid employees in the Residential Program.

39.     While Hourly Paid Staff in the Day Habilitation Program would accrue overtime hours due to lack of parking for instance, Hourly Paid Staff in the Residential Program would accrue overtime hours when they for example were forced to wait at a client's residence until another employee scheduled to arrive for the next shift relieved them.

40.     Hourly Paid Staff complained often to Plaintiff about their realization that their recorded clock out-times were being edited in the Kronos system. They could view their hours in Kronos of their clock-in/clock-out times and then see later that their times were changed, such that it did not accurately reflect the number of hours they worked in excess of 40 hours in a week.

41.     In March 2020, Plaintiff emailed Executive Director Tiffany Dacre regarding the

pattern and practice of the failure to pay her and Collective Class Members an overtime premium for all of their hours worked in excess of 40 hours in a given workweek. She again complained in September 2020 and Ms. Dacre became increasingly frustrated with Plaintiff and informed Plaintiff that the office budget did not allot for overtime compensation.

42.     On two occasions, Plaintiff witnessed Ms. Dacre manually change staff members' clock-out times back to 3:00pm (the end time of their scheduled shift) if the relevant paperwork was unsatisfactory/missing or there was a missing clock-*in* time in the Kronos timekeeping system. For example, if a staff member forgot to clock in but clocked out at 3:42pm, she would inexplicably edit the clock-out time back to 3:00pm.

43.     Plaintiff and Collective Class Members did not have authority to change their hours within the Kronos system. They only had the ability to view their recorded clock-in and clock-out times.

44.     Based on the paperwork regularly submitted on a weekly basis for approval of overtime pay for each Hourly Paid Staff member who worked in excess of 40 hours each week, per office policy, Defendants knew that Plaintiff and Collective Class Members were performing work that required overtime pay and yet as a matter of common policy and practice not only failed to accurately record and preserve all hours worked by Plaintiff and Collective Class Members but also actively engaged in time-shaving to purposefully avoid having to pay overtime compensation.

45.     Defendants were aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiff and Collective Class Members, an overtime premium of 1.5 times their regular rate of pay for all work hours Defendants suffered or permitted them to work in excess of 40 per workweek.

46.     Defendants' conduct was willful and in bad faith, and has caused significant damage to Plaintiff and Collective Class Members during the Collective Period.

47.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and Collective Class; as such, notice should be sent to the Collective Class. There are numerous similarly situated current and former employees of Defendant who were subject to the aforementioned uniform policies and practices in violation of the FLSA and who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.  Those similarly situated employees are known to the Defendants and would be readily identifiable through Defendants' records.

## WAGE AND HOUR CLASS ALLEGATIONS

48.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class:

> State Overtime Pay: All persons who are or have been employed by Defendants as Hourly Paid Staff in Brooklyn, New York within the period of the past six years prior to this action's filing date through the date of the final disposition of this action who worked over 40 hours in at least one workweek during the Class Period and who were subject to Defendants' failure to pay lawful overtime premiums for all hours worked over forty during a workweek based on the uniform policy and practices alleged herein.

49.     Plaintiffs incorporate by reference the facts alleged in the preceding paragraphs above.

50.     Numerosity: The Proposed Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the relevant time period, Defendants employed *at least* twenty people who satisfy the definition of the Proposed Classes.[1]

---

[1] While the Second Circuit has established that "numerosity is presumed at a level of 40 members," *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), courts have certified classes under Rule 23 where the class size is approximately 20 members. *See, e.g.*, *Odom v. Hazen Transp., Inc.*, 275 F.R.D. 400, 407 (W.D.N.Y. 2011) (certified a class of sixteen individuals, finding that while joinder is not impossible, it was nonetheless

51.     <u>Typicality</u>: Plaintiffs' claims are typical of the members of the Proposed Classes. Plaintiff is informed by other Hourly Paid Staff that the Putative Members of the Collective Classes and Classes were subject to the aforementioned unlawful policies during the Class Period.  Plaintiff was compensated in the same manner as an hourly paid employee. All Plaintiffs were subject to Defendant's unlawful policies and practices as alleged more fully above, including failing to uniformly pay lawful overtime premiums for all hours worked in excess of 40 during a work week during their employment period.

52.     <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

53.     <u>Adequacy</u>:   Plaintiffs will fairly and adequately protect the interests of the Proposed Collective Class and Class and has retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

54.     Commonality: Common questions of law and fact exist to all members of the Proposed Classes and predominate over any questions solely affecting individual members of the Proposed Classes, including but not limited to:

      a.   Whether Defendants unlawfully failed to pay appropriate overtime compensation to members of the Proposed Class in violation of NYLL;

      b.   Whether Defendants maintained lawful wage and hour records under the NYLL;

      c.   Whether Defendants employed Plaintiff and the Proposed Class within the meaning of New York law;

---

improbable); *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 181 (W.D.N.Y. 2005) (found numerosity for a class of 28 people); *Gortat v. Capala Bros.* 949 F.Supp.2d 374, 383 (E.D.N.Y. 2013) (numerosity satisfied where class consisted of 24 day laborers); *See also Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648 (4th Cir. 1967) (class of eighteen individuals found sufficiently numerous); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D.Pa.1990) (certification of class may be proper even with class as small as fourteen members).

       d.   Whether Defendants' actions were "willful" under the NYLL.

55.   The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

56.   Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed Classes predominate over any questions affecting only individual members of the Proposed Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' common and uniform policies and practices denied the Proposed Classes the wages to which they are entitled.  The damages suffered by the individual members of the Proposed Classes are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

57.   Plaintiff intends to send notice to all members of the Proposed Class to the extent required by Rule 23.  The names and addresses of the Proposed Class will be available from Defendants.

## **INDIVIDUAL ALLEGATIONS INVOLVING RETALIATION**

58.   In March 2020, Plaintiff opposed and complained in good faith to Defendants by emailing the Executive Director of the Brooklyn office, Tiffany Dacre, regarding the practice of time-shaving and reducing clock-out times in Kronos after the fact, resulting in the failure to

lawfully pay Hourly Paid Staff an overtime premium for all of their hours worked in excess of 40 hours in a given workweek. Ms. Dacre was dismissive of Plaintiff's complaint.

59.     Once the Day Habilitation program that Plaintiff Garcia directly oversaw as Program Manager restarted in September 2020, Hourly Paid Staff in that program began to accrue overtime hours once more due to the problem of limited public parking to park company-owned vans after Hourly Paid Staff dropped off clients at their respective homes.

60.     Ms. Dacre started questioning Plaintiff Garcia about the overtime hours that she and Hourly Paid Staff was accruing and warned her to watch the time.

61.     Ms. Dacre became more and more increasingly frustrated with Plaintiff Garcia's complaints regarding lack of overtime compensation for her and Hourly Paid Staff.

62.     Ms. Dacre informed Plaintiff Garcia that there was no room in the office's budget for overtime compensation.

63.     Nevertheless, Plaintiff Garcia continued to fill out the required paperwork, per Defendants' overtime policy for each Hourly Paid Staff member on a weekly basis.

64.     Hourly Paid Staff continued to complain to Plaintiff Garcia about the reduction of their hours and in turn, Plaintiff Garcia complained to Ms. Dacre on both her and their behalf.

65.     On September 29, 2020, Plaintiff Garcia was called into Ms. Dacre's office, where Program Specialist Kim Ellis and Regional State Director Ayesha Patrick were present in addition to Ms. Dacre herself.  They informed her that her job duties were "unfulfilled," because she allegedly did not timely submit "Life Plans"—created for each client by Hourly Paid Staff, specifically Care Coordinators, and edited by Plaintiff Garcia as part of her job duties—and as such, requested that she accept a demotion.  Plaintiff Garcia refused and her position was terminated.

66.     Both the offer of demotion and the subsequent termination constitute adverse employment actions in retaliation for Plaintiff Garcia's vocal complaints and protests against the Defendants' unlawful overtime policies and practices alleged herein.

67.     The reason set forth by Defendants for the adverse employment actions taken against Plaintiff Garcia are completely baseless.

68.     Plaintiff Garcia was in fact fulfilling all of her job duties. Each and every time she would reach out to Care Coordinators for them so that she could begin her editing process, she was informed they were being audited. Thus, any delay regarding submissions of the Life Plans was completely justified and outside of her control.

69.     Upon information and belief, these Life Plans were being audited starting in July/August 2020 through the end of Plaintiff Garcia's employment. As such, Plaintiff Garcia was not at fault for any delay in submitting Life Plans and the true reason for Plaintiff Garcia's termination was retaliation for the numerous complaints she raised with Ms. Dacre regarding Defendants' unlawful overtime policies and practices.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Fair Labor Standards Act: Unpaid Overtime Wages)**

70.     Plaintiff repeats and re-alleges each and every one of the above-referenced allegations as if fully set forth herein.

71.     Plaintiff consents in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b). Plaintiff's written consent form is attached hereto.  Plaintiff anticipates that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

72.      At all relevant times, Defendants constitutes as an "employer" engaged in interstate

commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203.  At all relevant times, Defendants have employed and continue to employ employees, including Plaintiff and the Putative Collective.

73.    At all relevant times, upon information and belief, each Defendant's gross revenue has exceeded $500,000.00.

74.    The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

75.    During their employment with Defendant, within the applicable statute of limitations, Plaintiff and the other Collective Class members worked in excess of forty hours per workweek without overtime compensation.

76.    Despite the hours worked by Plaintiff and the Collective Class members, Defendants willfully, in bad faith, and in knowing violation of the Federal Fair Labor Standards Act, failed and refused to pay them overtime compensation.

77.    Based on the policies and practices articulated above, Plaintiffs were uniformly denied FLSA mandated overtime premiums.

78.    By failing to accurately record, report, and/or preserve records of hours worked by Plaintiff and the Putative Collective, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA.

79.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

80.    Because Defendants' violations of the FLSA were willful, a three-year statute of

limitation applies. 29 U.S.C § 255.

81.  Plaintiff, on behalf of herself and the Collective Class, seeks the recovery of

attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**(New York Labor Law: Unpaid Overtime Wages)**

82.  Plaintiff alleges and incorporates by reference the allegations in the preceding

paragraphs.

83.  At all relevant times, Plaintiffs were employees and Defendant has been an employer

within the meaning of the New York Labor Law.

84.  The overtime wage provisions of Article 19 of the New York Labor Law and its

supporting regulations apply to Defendants.

85.  Defendants have failed to pay Plaintiff and the Putative Rule 23 Class the overtime

wages to which they are entitled to under the New York Labor Law.

86.  By Defendant's failure to pay Plaintiff and the Rule 23 Class Members premium

overtime wages for hours worked in excess of 40 hours per week, they have willfully within the

meaning of N.Y. Lab. Law § 663 violated the N.Y. Lab. Law Article 19, §§ 650 *et seq*., and the

supporting New York State Department of Labor Regulations, including but not limited to the

regulations in 12 N.Y.C.R.R. Part 142.

87.  Furthermore, Defendants have violated NYCRR 142-2.2 and NYLL §§ 191 and 193

by failing to pay Plaintiffs and the Class at least one and one-half times the minimum wage for

all hours worked over 40 in any workweek during the Class Period.

88.  Due to Defendants' violation of the NYLL, Plaintiffs and the Rule 23 Class Members

are entitled to recover from Defendants their unpaid overtime wages, reasonable attorneys' fees

and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### (New York Labor Law: Failure to Furnish Accurate Wage Statements)

89.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

90.     At all relevant times, Plaintiff was an employee and the Defendant has been an employer within the meaning of the NYLL.

91.     The recordkeeping provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

92.     NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

93.     Defendants did not provide Plaintiffs and the members of the Class with a legally Sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

94.     As a result of Defendants' unlawful conduct, Plaintiffs and members of the Classes are entitled to an award of damages pursuant to NYLL § 198, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Fair Labor Standards Act: Retaliation)

95.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

96.     At all times relevant herein, Plaintiff was employed by Defendants, individually and/or jointly within the meaning of the FLSA, 29 U.S.C. § 215.

97.     At all times relevant herein, Defendants were covered persons or entities within the meaning of the FLSA, 29 U.S.C. § 215.

98.     In violation of the FLSA, Defendant terminated Plaintiff Juana Garcia's

employment in retaliation for engaging in the protected activity of making complaints regarding Defendants' unlawful policies and practices as set forth above.

99.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to an award of all damages available under the FLSA, in an amount to be determined at trial, costs and attorney's fees, and liquidated damages.

### AS AND FOR FIFTH CAUSE OF ACTION
**(New York Labor Law: Retaliation)**

100.    Plaintiff Garcia alleges and incorporates by reference the allegations in the preceding paragraphs.

101.    At all times relevant herein, Plaintiff Garcia was employed by Defendants, individually and/or jointly within the meaning of the NYLL, § 215.

102.    At all times relevant herein, Defendants were covered persons or entities within the meaning of the NYLL, § 215.

103.    In violation of the NYLL, Defendants terminated Plaintiff Garcia's employment in retaliation for engaging in the protected activity of complaining to Defendants concerning Defendants' unlawful overtime policies and practices as set forth above.

104.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to an award of all damages available under the NYLL, in an amount to be determined at trial, costs and attorney's fees, and liquidated damages.

105.    A notice of this action was provided to the New York State Attorney General pursuant to NYLL § 215 prior to the filing of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all members of the Proposed Classes, respectfully requests that this Court:

A.      Declare that this action may proceed as a collective action pursuant to 29 U.S.C. 216 and a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.      Declare that Defendants have violated the Federal Fair Labor Standards Act as to Plaintiff Juana Garcia and the Putative Collective;

C.      Declare that Defendants violated the provisions of the New York Labor Law as to Plaintiff Garcia and the Putative Class;

D.      Declare that Defendants' violations as described above are found to be willful;

E.      Award Plaintiff Garcia and the Putative Collective and Class for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

F.      Award reasonable attorney's fees and costs pursuant to the NYLL and 29 U.S.C. § 216 and/or other applicable law; and

G.      Enjoin Defendants to cease and desist from unlawful activities in violation of the FLSA and the NYLL; and

H.       Grant Plaintiffs and the Putative Collective and Class such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff on behalf of herself and all other similarly situated persons demands a trial by jury as to all issues so triable.

DATED:  November 17, 2020
New York, New York

The Law Office of Christopher Q. Davis, PLLC

_____

Christopher Q. Davis (CD-7282)
Rachel M. Haskell (RH-8248)
80 Broad Street, Suite 703
New York, New York 10004
Telephone: (646) 430-7930

*Attorneys for Plaintiff and the Proposed Collective Classes and Classes*